Honorable John C. Coughenour

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR21-174 JCC |
| Plaintiff, | |
| v. | GOVERNMENT'S SENTENCING MEMORANDUM |
| JOSEPH TROY EASTON, | |
| Defendant. | |

Joseph EASTON was an integral member of a large, transnational drug trafficking organization (DTO) led by Jose MALDONADO-RAMIREZ and Iris AMADOR-GARCIA. He was a long-tenured, large-scale redistributor in Washington and one of only a few redistributors with direct access to the DTO leaders. During his time with the DTO, he distributed the three most prevalent and dangerous drugs of this time – methamphetamine, heroin, and fentanyl. These drugs were spread across the greater Puget Sound region and undoubtedly had a devasting impact on many local families. Making matters worse, EASTON carried a firearm and, in doing so, only made things much more dangerous for everyone else. Due to the magnitude of his drug trafficking activities, his possession of firearm to further those activities, and his lengthy criminal past, the United States respectfully requests the Court sentence EASTON to 120 months' imprisonment and impose a five-year term of supervised release.

GOVERNMENT'S SENTENCING MEMORANDUM - 1
*United States v. Joseph Troy Easton*, CR21-174 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 500
SEATTLE, WASHINGTON 98001
(206) 553-7970

## I.   SUMMARY OF THE INVESTIGATION

In February 2020, DEA agents identified Jose Alfredo MALDONADO-RAMIREZ[1] as a large methamphetamine distributor operating in Western Washington, working in conjunction with his girlfriend, Iris AMADOR-GARCIA. Over the next 18 months, through controlled purchases, physical and electronic surveillance, travel records, and a variety of other investigative techniques, agents were able to determine that MALDONADO-RAMIREZ and Iris AMADOR-GARCIA not only had an extensive drug trafficking operation in Western Washington, but they also appeared to be distributing large amounts of drugs in the Northeast (Massachusetts and New York), the Midwest (Illinois and Ohio) and the South (Florida, Arkansas, Tennessee, and Virginia). During recorded conversations with cooperating sources, MALDONADO-RAMIREZ spoke openly about supplying large amounts of methamphetamine, heroin, and fentanyl pills to redistributors in Washington, as well as others in Tennessee and New York, and later of his plan to ultimately distribute 100 pounds of methamphetamine per month in Western Washington.

Using confidential sources, agents conducted 12 controlled purchases from MALDONADO-RAMIREZ, Iris AMADOR-GARCIA, and their criminal associates, both before and after agents began intercepting the DTO's phones. Each of the controlled buys included in the chart below was arranged through MALDONADO-RAMIREZ and the drugs were delivered by him, Iris AMADOR-GARCIA, or a close associate.[2] In total, agents purchased approximately 13 pounds of methamphetamine and close to 17,000 pills containing fentanyl.

//

//

---

[1] Individuals whose names are capitalized have been charged in this case; individuals whose names are not capitalized are unindicted co-conspirators.

[2] Drug amounts in **bold** and followed by **"g"** refer to drugs that were subsequently tested and weighed by the DEA Lab.

GOVERNMENT'S SENTENCING MEMORANDUM - 2
*United States v. Joseph Troy Easton*, CR21-174 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 500
SEATTLE, WASHINGTON 98001
(206) 553-7970

| CONTROLLED BUYS | | | | |
|---|---|---|---|---|
| # | DATE | DRUG AMOUNT ORDERED / DELIVERD | CS USED | PARTICIPANTS |
| 1 | 2/16/20 | 1 lb Meth / **437.7 g (100%)** | CS1 | MALDONADO-RAMIREZ |
| 2 | 3/2/20 | 4 lbs Meth / **1,740.5 g (99%)** | CS1 | MALDONADO-RAMIREZ & Iris AMADOR-GARCIA |
| 3 | 6/30/20 | 476 Pills[3] / **43.7 g** | CS1 | MALDONADO-RAMIREZ & Alysha Jones |
| 4 | 8/5/20 | 500 Pills / **58.4 g** | CS1 | MALDONADO-RAMIREZ & Malaquais Lopez-Chavez |
| 5 | 11/24/20 | 1 lb Meth / **458.9 g (99%)** | CS1 | MALDONADO-RAMIREZ & LOPEZ-MENDEZ |
| 6 | 3/10/21 | 1 lb Meth / **421.5 g (95%)** | CS4 | MALDONADO-RAMIREZ & LOPEZ-MENDEZ |
| 7 | 4/22/21 | 2 lbs Meth / **840.1 g (94%)** | CS4 | MALDONADO-RAMIREZ & BERNAL |
| 8 | 4/30/21 | 1,000 Pills / **111.3 g** | CS4 | MALDONADO-RAMIREZ |
| 9 | 5/28/21 | 5,000 Pills / **556.4 g** | CS4 | MALDONADO-RAMIREZ & BERNAL |
| 10 | 6/11/21 | 2 lbs Meth / **878.7 g (97%)** | CS4 | MALDONADO-RAMIREZ & BERNAL |
| 11 | 7/1/21 | 2 lbs Meth / **866.6 g (96%)** | CS4, CS5 | MALDONADO-RAMIREZ & BERNAL |
| 12 | 9/2/21 | 10,000 Pills / **1,115.6 g** | CS4, CS5 | MALDONADO-RAMIREZ |

In addition to the controlled buys, agents seized large quantities of drugs on four occasions. Three of the seizures were the result of a traffic stop and subsequent search of an interstate courier's vehicle. During the first seizure on May 16, 2020, agents in Washington recovered over nine pounds of methamphetamine (**4,179.8 grams** – 95% pure) from a truck occupied by MALDONADO-RAMIREZ and driven by interstate courier Fernando Alcides LOPEZ-MENDEZ. Close to a year later, on April 2, 2021, agents in California seized approximately 30 pounds of methamphetamine (**13,300 grams** – 95% pure) from a rental car driven by LOPEZ-MENDEZ. Most recently, on September 28,

---

[3] CS1 ordered 500 pills, but MALDONADO-RAMIREZ raised the price and had Jones remove some of the pills from the bag prior to delivering them.

GOVERNMENT'S SENTENCING MEMORANDUM - 3
*United States v. Joseph Troy Easton*, CR21-174 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 500
SEATTLE, WASHINGTON 98001
(206) 553-7970

2021, agents in Washington seized more than 57 pounds of methamphetamine (**25,950 grams** – 96% pure) and close to 20,000 pills containing fentanyl (**2,201 grams** of fentanyl) from a rental car driven by interstate courier Justino CRUZ-VICTORIO. *See* photographs of the seizure on September 28, 2021, below:






In addition to those three seizures from the interstate couriers, on August 17, 2021, agents in California also intercepted more than 19 pounds of methamphetamine (**8,692 grams** – 96% pure) that MALDONADO-RAMIREZ, his mother (Mildred Adriana RAMIREZ-PEREZ) and her brother-in-law (Amado Pedro CASTILLO) attempted to send to a buyer in Fiji. Between the controlled purchases and the seizures described above, agents seized approximately 128 pounds of methamphetamine and 37,000 fentanyl pills.

Through the interception of MALDONADO-RAMIREZ's phones, agents quickly discovered that Iris AMADOR-GARCIA was an equal partner in their drug trafficking

GOVERNMENT'S SENTENCING MEMORANDUM - 4
*United States v. Joseph Troy Easton*, CR21-174 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 500
SEATTLE, WASHINGTON 98001
(206) 553-7970

business and that much of drugs being distributed by the DTO were secured by Iris AMADOR-GARCIA. Intercepted communications and other evidence also confirmed that they were assisted by MALDONADO-RAMIREZ's mother in Mexico (RAMIREZ-PEREZ), his uncle in New York (CASTILLO) and his friend in Washington (Jose Nolberto BERNAL), as well as Iris AMADOR-GARCIA's brother (Mario Alberto AMADOR-GARCIA) and her other boyfriend (Bayron Eberto GARCIA-PEREZ), both of whom resided with her in California.

Through intercepted calls and surveillance, agents identified two large, local redistributors in Western Washington, Joseph EASTON and Dwayne GEORGE, who were responsible for distributing the drugs transported from California. Interceptions over Joseph EASTON's phones, revealed that his wife (Angelique EASTON) helped him distribute drugs to an assortment of local redistributors (such as Jerry KOHL, Douglas HEALER, Curtis GRIFFIN, Preston SMITH, and Barbi BARNES) who were obtaining drugs in multiple pounds and/or kilograms, not ounces. *See* organizational chart below:



GOVERNMENT'S SENTENCING MEMORANDUM - 5
*United States v. Joseph Troy Easton*, CR21-174 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 500
SEATTLE, WASHINGTON 98001
(206) 553-7970

In addition to the incredible amounts of drugs being pumped into communities across the United States, there were other concerning aspects to this DTO that surfaced towards the end of the investigation. First, during the last controlled buy on September 2, 2021, MALDONADO-RAMIREZ asked CS4 and CS5 to help him acquire some firearms (referred to as "toys") so he (MALDONADO-RAMIREZ) could send them to family members of Iris AMADOR-GARCIA and her brother Mario AMADOR-GARCIA, who were fighting others in Tijuana, Mexico. MALDONADO-RAMIREZ explained that he had $30,000 available to pay for the firearms but preferred to pay for the firearms with drugs. After subsequent communications with MALDONADO-RAMIREZ, during which he made it clear that they (MALDONADO-RAMIREZ and family) were looking for larger guns, not handguns, CS4 sent two photographs of eight high-powered semiautomatic rifles to MALDONADO-RAMIREZ at the agents' direction. *See* photographs below:

 

MALDONADO-RAMIREZ and CS4 continued to discuss this "deal" throughout September and October 2021 and eventually agreed that MALDONADO-RAMIREZ would provide 40 to 60 pounds of methamphetamine and 75,000 to 80,000 fentanyl pills in exchange for the eight semiautomatic rifles and cash. During this time, MALDONADO-RAMIREZ communicated with Mario AMADOR-GARCIA about the firearms deal, and it appeared that Mario AMADOR-GARCIA was communicating with his family members

GOVERNMENT'S SENTENCING MEMORANDUM - 6
*United States v. Joseph Troy Easton*, CR21-174 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 500
SEATTLE, WASHINGTON 98001
(206) 553-7970

1   in Mexico regarding the firearms being offered and was responsible for securing the
2   fentanyl pills for this deal.

3   Even more concerning, however, was the DTO's brazen threat to harm a local
4   officer. On October 4, 2021, just six days after the 57 pounds of methamphetamine and
5   20,000 fentanyl pills were seized from CRUZ-VICTORIO in Washington, agents
6   intercepted a call between Iris AMADOR-GARCIA and MALDONADO-RAMIREZ
7   discussing the local officer who was responsible for the seizure. During the call, Iris
8   AMADOR-GARCIA told MALDONADO-RAMIREZ that they had identified the officer
9   responsible for the seizure, knew where he lived, and needed a "toy" (firearm).
10  MALDONADO-RAMIREZ said he had the toys – four of them – and added they were
11  "short ones" (handguns). Iris AMADOR-GARCIA said she needed ammunition and
12  wanted him (MALDONADO-RAMIREZ) to clean them (the guns). MALDONADO-
13  RAMIREZ asked, "Who is going to help you, your cousin?" Iris AMADOR-GARCIA
14  replied, "Uh-huh." Following the call, agents alerted the Centralia Police Department and
    the officer. He and his family relocated to a hotel and were placed into protective custody.

15  Due to that discussion, the government decided to accelerate the arrests of
16  MALDONADO-RAMIREZ, Iris AMADOR-GARCIA, Mario AMADOR-GARCIA, and
17  their closest associates who agents believed would flee if not arrested at the same time.
18  Accordingly, the government split its charges into two indictments returned on October 20,
19  2021, corresponding with two separately planned coordinated arrest operations (the
20  *Maldonado-Ramirez* indictment and the *George* indictment, corresponding with the "Core
    DTO" and "WA Distribution Cell" portions of the above chart, respectively).

21  On October 28, 2021, agents executed search warrants in Washington, California,
22  and New York, and arrested seven of the eight defendants indicted in the *Maldonado-*
23  *Ramirez* case (Mildred RAMIREZ-PEREZ remains a fugitive and is believed to reside in
24  Mexico), along with one other individual, GARCIA-PEREZ, who was subsequently
25  charged by complaint. During a search of the California residence shared by Iris
26  AMADOR-GARCIA, GARCIA-PEREZ, and Mario AMADOR-GARCIA, agents
27  recovered approximately 80,000 fentanyl pills (**8,657 grams**) and more than a kilogram of

GOVERNMENT'S SENTENCING MEMORANDUM - 7
*United States v. Joseph Troy Easton*, CR21-174 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 500
SEATTLE, WASHINGTON 98001
(206) 553-7970

fentanyl powder (**1,002.7 grams**), as well as approximately $91,000 and two handguns. The 80,000 pills, which were part of the deal to acquire the eight semiautomatic rifles, were recovered from a backpack in the garage. Based on intercepted calls, toll records, and tracking information from redistributor GEORGE's phone, agents believe GEORGE arrived in California that day to transport those pills and a large amount of methamphetamine stored an at unknown location to Washington for the firearms deal and for general distribution to the DTO's redistributors in Western Washington.

During the search of MALDONADO-RAMIREZ's home in California, as well as his apartment and storage unit in Kent, Washington, agents recovered a total of three handguns and one semiautomatic assault rifle, a small amount of cocaine, two drug ledgers, digital scales, and drug packaging materials. Agents also recovered another four firearms (two handguns and two semiautomatic rifles), approximately 1,000 pills believed to contain fentanyl, more than $2,100, two drug ledgers, and drug packaging materials from BERNAL's neighboring apartment in Kent. Finally, a drug packaging station was discovered at CRUZ-VICTORIO's California residence.

On November 2, 2021, agents executed additional warrants in Washington and Arkansas and arrested six of the eight defendants in the *George* indictment, along with one other individual (Robert Eugene MEYER) who was subsequently charged by complaint after more than a kilogram of methamphetamine, four firearms, three improvised explosive devices, and more than $20,000 in cash drug proceeds were recovered from his residence. Joseph SMITH and his former girlfriend, Barbi BARNES, were not located that day, but were arrested separately in the weeks that followed.

The search of EASTON's home resulted in the recovery of two ounces of methamphetamine and a firearm – a firearm that EASTON took with him to meet MALDONADO-RAMIREZ on October 4, 2021, to discuss his mounting debt to the DTO. As a convicted felon, EASTON was prohibited from possessing firearms and ammunition.

When agents attempted to arrest Douglas HEALER and execute warrants to search his house and vehicle, HEALER engaged in an armed standoff with law enforcement, firing a shot inside his home, and refusing to surrender for many hours. When he was eventually

GOVERNMENT'S SENTENCING MEMORANDUM - 8
*United States v. Joseph Troy Easton*, CR21-174 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 500
SEATTLE, WASHINGTON 98001
(206) 553-7970

taken into custody, agents recovered the semi-automatic assault rifle that HEALER had fired during the standoff, as well as 55 additional firearms, including a handgun equipped with a fake suppressor from his bedroom and a combination of 54 handguns, rifles, shotguns, and assault rifles from two separate gun safes. Agents also recovered body armor, a large assortment of ammunition, and more than 100 grams of methamphetamine and five kilograms of marijuana from HEALER's home.

The arrests and searches of the other redistributors' homes (GEORGE, GRIFFIN, and KOHL) resulted in the seizure of additional quantities of narcotics and a few additional firearms – a handgun and shotgun were recovered from GRIFFIN's residence. HEALER and GRIFFIN, like EASTON, were prohibited from possessing firearms due to their lengthy criminal pasts.

Joseph EASTON's particular role in the conspiracy is described in greater detail in Section V.B., below.

## II.    EASTON'S GUILTY PLEA

On August 1, 2023, EASTON pled guilty to a lesser-included count of Conspiracy to Distribute Controlled Substances in Count 1 of the Second Superseding Indictment, and as charged to both Carrying a Firearm During and in Relation to a Drug Trafficking Crime (Count 17), and Unlawful Possession of a Firearm (Count 19). Dkt. 601. Included with his plea was a detailed statement of facts that described his criminal conduct. *Id.* at ¶ 8. In the plea agreement, the United States agreed to recommend a sentence of no greater than 120 months. *Id.* at ¶ 11.

## III.    STATUTORY PENALTIES

Conspiracy to Distribute Controlled Substances, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B), and 846, is punishable by a term of imprisonment of up to 40 years with mandatory minimum term of five years, a fine of up to $5,000,000, a mandatory period of supervision following release from prison of at least four years, and a mandatory special assessment of $100.

Carrying a Firearm During and in Relation to a Drug Trafficking Crime, in violation of Title 21, United States Code, Sections 924(c)(1)(A)(i), is punishable by a term of

GOVERNMENT'S SENTENCING MEMORANDUM - 9
*United States v. Joseph Troy Easton*, CR21-174 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5000
SEATTLE, WASHINGTON 98001
(206) 553-7970

imprisonment of up to life with a mandatory minimum term of five years, which must be served consecutive to any other sentence imposed, a fine of up to $250,000, a period of supervision of up to five years, and a $100 mandatory special assessment.

Felon in Possession of a Firearm, in violation of Title 18, United States Code, Section 922(g)(1), is punishable by a term of imprisonment of up to 15 years, a fine of up to $250,000, a period of supervision following release from prison of up to three years, and a mandatory special assessment of $100.

## IV.    SENTENCING GUIDELINES

### A.    Offense Level

The parties agree that EASTON's total offense level under the Sentencing Guidelines is 38, as calculated below:

| | | |
|---|---|---|
| Base Offense Level | 36 | Based on the amount of drugs involved in the offense -- USSG § 2D1.1(c)(2) |
| Specific Offense Characteristic | +4 | Based on his knowing misrepresentation of a substance containing fentanyl -- USSG § 2D1.1(b)(13) |
| Acceptance of Responsibility | - 2 | Based on his untimely plea -- USSG § 3E1.1(a) |
| Total Offense Level: | 38 | |

PSR ¶¶ 44–58; *see also* Dkt. 601 at 9.

### B.    Criminal History Category

EASTON has been convicted of 45 criminal offenses, including 8 felonies. PSR ¶¶ 59–89. We agree with USPO Muise's determination that these prior convictions generate 11 criminal history points and place EASTON squarely into Criminal History Category V. PSR ¶¶ 90–91.

EASTON, however, filed an objection to the PSR asserting that the sentences described in Paragraphs 80 and 82 in the final draft of the PSR should not be counted towards his criminal history score, arguing that these sentences were imposed on June 28, 2011, which was more than ten years prior to his commencement of the current offense, June 26, 2021. In support of his argument, EASTON pointed out the following:

> … [I]n 2012, 2016, 2018, 2020, there were 366 days in each "year"- the Guidelines make no provision for a "year" of a differing length than 365 days, and so the traditional "year" that is 365 days should be utilized to measure the time period for purposes of criminal history scoring.  There was more than 3650 days between 6/28/2011, and 6/26/2021. U.S.S.G. section 4A1.2(e)(2).

PSR at 30. As USPO Muise correctly pointed out in his response, PSR at 30–31, EASTON was identified as a member of the DTO well-before June 26, 2021, and his conduct dated back to at least December 28, 2020. In fact, EASTON admitted to this in his plea:

> For more than a year, EASTON regularly acquired large amounts of methamphetamine, heroin, and pills containing fentanyl directly from the DTO. For example, early in the investigation, prior to intercepting DTO phones, EASTON met with members of the DTO to obtain large, undetermined amounts of drugs on December 28, 2020 (in Tacoma), January 21, 2020 (in Tukwila), February 6, 2021 (in Bremerton), February 25, 2021 (in Tacoma), March 6, 2021 (in Tukwila), and March 18, 2021 (in Tacoma).

Dkt. 601 (Plea Agreement) at 8. As a result, these convictions were committed within the ten-year time limit and count towards EASTON's criminal history score.

## C.   Guidelines Range

Based on a total offense level of 38 and Criminal History Category V, the government agrees with USPO Muise that EASTON's Guidelines range for the drug conspiracy in Count 1 and the unlawful possession of a firearm offense in Count 19 is 360 months to life. PSR ¶ 153. The 924(c) offense in Count 17 has a mandatory minimum term of 60 months' imprisonment, which effectively raises the advisory Guidelines range to 420 months to life.

GOVERNMENT'S SENTENCING MEMORANDUM - 11
*United States v. Joseph Troy Easton*, CR21-174 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 500
SEATTLE, WASHINGTON 98001
(206) 553-7970

## V.     GOVERNMENT'S SENTENCING RECOMMENDATION

The United States respectfully requests that the Court sentence EASTON to 120 months' imprisonment, followed by a five-year term of supervised release. The United States believes that a 120-month sentence is appropriate in light of "the nature and circumstances of the offense," and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and "to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(C). A review of the pertinent Section 3553(a) sentencing factors, below, supports the recommended sentence.

### A.     EASTON's History and Characteristics

EASTON was born in Bremerton, Washington, and was raised by his mother and stepfather. PSR ¶¶ 102–103. His biological father abandoned him shortly after he was born and had had limited contact with him over the course of his lifetime. PSR ¶¶ 102 and 104. EASTON reports that his parents struggled with alcohol abuse and describes their home as the "party house." PSR ¶ 105. He describes his homelife as chaotic and it appears to have been marred by some domestic violence. PSR ¶ 107. Despite his stepfather's shortcomings, EASTON considered him his "best friend." PSR ¶¶ 105 and 107.

EASTON struggled in school and dropped out in the 11th grade. PSR ¶ 108. His mother died a few years later, when he was 20 years old, and he describes turning to alcohol and methamphetamine to deal with her loss. PSR ¶ 109. While his legal troubles were no doubt influenced by his substance abuse, EASTON had previously been in trouble as an adolescent. PSR ¶¶ 59–63, 92. Later, between 2001 through 2012, he committed 36 of his 45 criminal offenses, including seven felony offenses and several non-felony domestic violence offenses. PSR ¶¶ 64–89, 92. Around 2015, EASTON married Angelique EASTON, whom he met at a work release facility, and he reports several years of sober living and legitimate employment prior to the death of his stepfather in 2020. PSR ¶¶ 110–111. After his stepfather's death, EASTON states that he turned back to alcohol and methamphetamine and before too long, as evidenced by this investigation, he was immersed in criminal activity again and was selling drugs for the DTO. PSR ¶ 114.

GOVERNMENT'S SENTENCING MEMORANDUM - 12
*United States v. Joseph Troy Easton*, CR21-174 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 500
SEATTLE, WASHINGTON 98001
(206) 553-7970

**B.      EASTON's Role in the Offense**

**1.      EASTON's Distribution Activities**

For more than a year, EASTON regularly acquired kilograms of methamphetamine, thousands of fentanyl pills, and significant amounts of heroin directly from DTO Leader MALDONADO-RAMIREZ. Early in the investigation, prior to intercepting the DTO's phones, agents observed EASTON meet with MALDONADO-RAMIREZ or his interstate courier at the time, LOPEZ-MENDEZ, to obtain large, undetermined amounts of drugs on December 28, 2020 (in Tacoma), January 21, 2021 (in Tukwila), February 6, 2021 (in Bremerton), February 25, 2021 (in Tacoma), March 6, 2021 (in Tukwila), and March 18, 2021 (in Tacoma). *See* photographs of meetings on January 21, 2021, and March 6, 2021, below:

<u>January 21, 2021</u>






*(MALDONADO-RAMIREZ and LOPEZ-MENDEZ on way to meet EASTON seated in white truck)*

GOVERNMENT'S SENTENCING MEMORANDUM - 13
*United States v. Joseph Troy Easton*, CR21-174 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 500
SEATTLE, WASHINGTON 98001
(206) 553-7970

March 6, 2021

 

 

*(MALDONADO-RAMIREZ and LOPEZ-MENDEZ meeting with EASTON)*

Once EASTON acquired the drugs, he delivered them to a local network of redistributors. The amounts of drugs being acquired from MALDONADO-RAMIREZ and the identity of EASTON's redistributors were later confirmed after investigators began intercepting DTO phones in June 2021. EASTON's core redistributors included KOHL, HEALER, GRIFFIN, SMITH, and BARNES, as well as a host of other unindicted coconspirators. Some examples of the amounts EASTON was acquiring and redistributing to others are described below.

On June 26, 2021, EASTON delivered five pounds of methamphetamine to KOHL at the Classy Chassis Car Wash in Tacoma in exchange for $10,000. EASTON then met with MALDONALDO-RAMIREZ in Tukwila to give him the money received from KOHL. *See* photographs of the meetings below.

//

//

GOVERNMENT'S SENTENCING MEMORANDUM - 14
*United States v. Joseph Troy Easton*, CR21-174 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 500
SEATTLE, WASHINGTON 98001
(206) 553-7970



*(EASTON near motorcycle; KOHL in green truck)*     *(EASTON and MALDONADO-RAMIREZ)*

On June 30, 2021, EASTON and his wife obtained ten pounds of methamphetamine from MALDONADO-RAMIREZ in Tukwila. *See* photographs of the meeting below. The first three photos show MALDONADO-RAMIREZ (blue shirt) meeting with EASTON (gray shirt) to hand over the methamphetamine; the fourth and fifth photos depict EASTON and his wife driving away in the blue Audi and later stopping at a gas station mini-mart.



On July 3, 2021, EASTON delivered three pounds of the methamphetamine to HEALER and another two pounds to SMITH, both of whom lived in Port Orchard,

GOVERNMENT'S SENTENCING MEMORANDUM - 15
*United States v. Joseph Troy Easton*, CR21-174 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 500
SEATTLE, WASHINGTON 98001
(206) 553-7970

Washington. The next day, July 4, 2021, EASTON delivered a half-pound of methamphetamine to GRIFFIN in Belfar, Washington.

On July 7, 2021, EASTON delivered a kilogram of heroin to SMITH and BARNES in Silverdale, Washington, that he had earlier obtained from MALDONADO-RAMIREZ. This was the first of two one-kilogram heroin deals with SMITH and BARNES. The second occurred five days later, on July 12, 2021, in Bremerton, Washington. *See* photographs of the heroin from the second deal below. In between those two heroin deals, on July 9, 2021, EASTON delivered a half-pound of methamphetamine to SMITH.

 

On July 10, 2021, EASTON obtained three pounds of methamphetamine from MALDONADO-RAMIREZ in Tukwila, and later delivered two pounds of it to GRIFFIN on July 13, 2021, in Belfar, Washington.

On July 14, 2021, EASTON obtained 13 pounds of methamphetamine from MALDONADO-RAMIREZ in Tukwila and immediately delivered ten pounds of it to KOHL in Tacoma, Washington.

On July 17, 2021, EASTON obtained another ten pounds of methamphetamine from MALDONADO-RAMIREZ in Kent, Washington. *See* photographs of the meeting below. HEALER accompanied EASTON to this meeting and EASTON later gave HEALER three

GOVERNMENT'S SENTENCING MEMORANDUM - 16
*United States v. Joseph Troy Easton*, CR21-174 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 500
SEATTLE, WASHINGTON 98001
(206) 553-7970

pounds of methamphetamine on July 21, 2021. EASTON also gave one pound of methamphetamine to GRIFFIN on July 20, 2021, in Belfair.



*(EASTON observed speaking to MALDONADO-RAMIREZ and then retrieving blue backpack containing methamphetamine before leaving in HEALER's black Dodge)*

Two weeks later, on July 31, 2021, EASTON obtained another ten pounds of methamphetamine from MALDONADO-RAMIREZ and distributed it to others.

EASTON also acquired and helped the DTO redistribute thousands of fentanyl pills, though the amounts acquired and/or delivered on a specific occasion was less clear. For example, on June 25, 2021, EASTON told SMITH he had more "blues" (pills containing fentanyl). SMITH said he still had plenty and referred to the two bags of pills EASTON had previously given him. Three days later, on June 28, 2021, SMITH informed EASTON that someone was talking about buying all of them (pills) right now and asked EASTON how many (pills) he (EASTON) had so that he could fulfill the buyer's order. EASTON told SMITH he had 2,000 to 3,000 left.

On June 29, 2021, EASTON asked if HEALER was ready for more. HEALER said yes, always. HEALER then asked EASTON if he had more "blues" (pills containing fentanyl). EASTON said he had 4,000. HEALER said he was getting low and that he only had a couple of hundred right now and that they would not last long.

On July 15, 2021, an unindicted co-conspirator called EASTON to see if "they" (EASTON and his wife) had "anything." EASTON's wife answered EASTON's phone and said not now – they were all sold out – but explained they (she and EASTON) were on their way to Tukwila (where EASTON commonly met MALDONADO-RAMIREZ) and

GOVERNMENT'S SENTENCING MEMORANDUM - 17
*United States v. Joseph Troy Easton*, CR21-174 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 500
SEATTLE, WASHINGTON 98001
(206) 553-7970

said she would call when they were coming back. Later, the unindicted co-conspirator called back asking if they (EASTON and his wife) got any "blues" (pills containing fentanyl) and EASTON's wife said she thought so. The unindicted co-conspirator then sent a text message to EASTON that read, "I have like $600 or more if the sky is blue today and [some] more for clear skies" (referring to the unindicted co-conspirator's desire to acquire more fentanyl pills and methamphetamine).

### 2.    EASTON's Mounting Debt and Possession of a Firearm

Towards the end of the investigation, EASTON had run up a large debt with the DTO. As a result of EASTON's debt and the late September seizure from CRUZ-VICTORIO, MALDONADO-RAMIREZ said he wanted to meet with EASTON in order to pitch an idea. The idea was to have EASTON, or someone on his behalf, serve as the DTO's interstate courier as a means of working off the EASTON's $50,000 debt. EASTON, however, feared that MALDONADO-RAMIREZ may be intending to do him harm. As a result, in the days leading up to this meeting, the intercepted calls made it clear that EASTON had convinced GRIFFIN and HEALER to accompany him to the meeting. The intercepted calls also made it clear that they would be armed for this meeting.

For example, on October 5, 2021, EASTON told HEALER that GRIFFIN wanted to know if HEALER had any extra magazines for a 6-RP 2-20. EASTON said it was a 45 caliber. HEALER said he did not have any for a 2-20. EASTON asked if HEALER had any (ballistic) vests. HEALER said he had the vests in his storage shed. EASTON said GRIFFIN was saying he (MALDONADO-RAMIREZ) was not playing if he (EASTON) owed like 50 grand. EASTON said that they could probably get some wigs and vest up. EASTON also said that GRIFFIN suggested that they have a couple people outside to serve as lookouts. HEALER said he did not want too many people going if this would be going down. EASTON then asked if just the three of them should go then, and HEALER said he preferred that. EASTON said they (EASTON, GRIFFIN, and HEALER) had enough guns and stated that GRIFFIN wanted to take more than one clip or another gun, explaining that GRIFFIN was concerned that once you burn through 15 (rounds) then you are empty. HEALER asked if all GRIFFIN had was that one piece (firearm). EASTON said yes, but

GOVERNMENT'S SENTENCING MEMORANDUM - 18
*United States v. Joseph Troy Easton*, CR21-174 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 500
SEATTLE, WASHINGTON 98001
(206) 553-7970

he (GRIFFIN) said HEALER had some extras. HEALER said yes and told EASTON to tell him (GRIFFIN) not to worry. HEALER also said he would look for the vests. *See* Exhibit A, Session 2234 (transcript of the call).

The following day, on October 6, 2021, just hours before EASTON, GRIFFIN, and HEALER arrived at MALDONADO-RAMIREZ's apartment complex in EASTON's Tahoe, EASTON confirmed he was going to be armed for the meeting. During this call, HEALER asked EASTON what (firearm) EASTON had. EASTON said he had Sig Sauer 9mm and when asked what model he replied 2022 – a Sig Sauer 2022, which matched the model number of the firearm that would later be recovered from EASTON's Tahoe at takedown. *See* Exhibit B, Session 2368 at 6–7 (pages 93–94 of transcript).

Ultimately, EASTON declined the offer to serve as the DTO's interstate courier and he was cut off – Iris AMADOR-GARCIA told MALDONADO-RAMIREZ not to supply EASTON with any more drugs. As a result, EASTON's wife, Angelique EASTON, began acquiring ounce-sized quantities from KOHL ("her Jerry"), which she and EASTON then worked together to sell in a futile effort to earn the money they owed the DTO.

### 3.     EASTON's Arrest and the Recovery of the Firearm

On November 2, 2021, agents and members of local law enforcement went to the EASTON's residence in Bremerton, Washington, to arrest EASTON and his wife and search their home. Both were arrested without incident. During the search of their home, agents recovered 52.4 grams of pure methamphetamine. During the search of EASTON's Chevrolet Tahoe, agents found a Sig Sauer, Model SP 2022, semi-automatic pistol loaded with 14 rounds of ammunition in the glove box. *See* photograph of the pistol below:




GOVERNMENT'S SENTENCING MEMORANDUM - 19
*United States v. Joseph Troy Easton*, CR21-174 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 500
SEATTLE, WASHINGTON 98001
(206) 553-7970

This firearm was the one EASTON took with him when he, GRIFFIIN and HEALER met with MALDONADO-RAMIREZ on October 6, 2021. An additional bag of ammunition was also recovered from the rear of the Tahoe. As a convicted felon, EASTON was prohibited from possessing this firearm and ammunition.

## C.    Nature and Circumstances, and Seriousness of the Offenses

The Court knows the devastating impact that drugs like methamphetamine, heroin, and fentanyl have on the community. As evidenced by EASTON's own criminal past, drug users frequently resort to stealing – from family members, friends, and complete strangers – to feed their addiction and are responsible for a large percentage of these crimes, as well as the violent crimes, in our communities.

More importantly, the Court also knows that these drugs not only destroy the lives of those who use them, they also destroy the lives of the users' families and friends. Those families and friends are prisoners, forced to watch the toll these drugs take on their son, their daughter, their mother, their father, their friend. While the number of people directly and indirectly impacted by the drugs EASTON distributed is difficult to quantify, it is undeniable. The drugs he helped spread through our community undoubtedly fell into the hands of long-time addicts, first-time users, and everyone in between. Their lives, and the lives of those around them, will never be the same. And that is just the fate bestowed upon those that were fortunate enough to survive. Based on recent numbers from Public Health of Seattle and King County, there were 701 overdose deaths in King County between January 1, 2022, and October 15, 2022. *See* Exhibit C. Of those deaths, 70% of them (~ 490 deaths) were attributable to fentanyl. *Id*. That means the fentanyl pills sold on the street in 2022, just like those distributed by EASTON, were responsible for killing more than one person per day in King County alone. And these numbers only increased in 2023, as fentanyl contributed to 1,090 overdose deaths (2.98 deaths per day) while methamphetamine contributed to 750 deaths (2.05 deaths per day) in 2023. *See* Exhibit D.[4]

---

[4] Data was obtained from https://app.powerbigov.us/view?r=eyJrIjoiNzY2NjVlMDItYWYzNy00NzlhLWE0Y2MtMWJkYjcwNzc1Yjc0IiwidCI6ImJhZTUwNTlhLTc2ZjAtNDlkNy05OTk2LTcyZGZlOTVkNjljNyJ9&pageName=ReportSection on March 4, 2024.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 500
SEATTLE, WASHINGTON 98001
(206) 553-7970

1   Thus, it is not unreasonable to believe that law enforcement's seizure of approximately
2   120,000 fentanyl pills saved several lives.

3     Based on his own personal experience and struggles with drug addiction, EASTON
4   was acutely aware of the damage these drugs cause. Despite that personal experience and
5   insight, he chose to engage in drug trafficking to spread these dangerous drugs, and misery
6   that followed, to others in our community. To his credit, however, EASTON stepped up at
7   the FDC, and with the help of two other inmates, provided aid to a third inmate who
8   overdosed and had stopped breathing. Fortunately, the inmate was revived using Narcan
    and survived. *See* Exhibit E – FDC Report.

9   **D.   Need to Promote Respect for the Law, Provide Just Punishment for the Offense, Afford Adequate Deterrence, and Protect the Public**

10    EASTON was not some low-level redistributor selling just enough to support his
11  own habit. He was regularly selling numerous pounds of methamphetamine, kilograms of
12  heroin, and thousands of fentanyl pills. This was his business. As such, he played an
13  integral role in disseminating these poisonous drugs throughout the community. In doing
14  so, he, his wife, and the DTO all preyed on others' addiction for their own selfish financial
15  gain, knowing full-well the damage these drugs were causing. Furthermore, EASTON had
16  access to, and in fact possessed, firearms while conducting his drug trafficking activities.
17  During one intercepted conversation, MALDONADO-RAMIREZ encouraged EASTON
18  to be safe and to take a somebody with him to drug deals. EASTON responded, "I do. I do.
19  It's called a – it's called a Smith and Wesson." *See* Exhibit F, Session 424 at 4 (page 24 of
20  transcript). EASTON's possession and use of firearms is an aggravating factor and
21  confirms that EASTON is not only deserving of a significant sentence, but that such a
22  sentence is also necessary to protect the public.

23    //
24    //
25    //

GOVERNMENT'S SENTENCING MEMORANDUM - 21
*United States v. Joseph Troy Easton*, CR21-174 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 500
SEATTLE, WASHINGTON 98001
(206) 553-7970

**E.     Kinds of Sentences Available, and Any Necessary Educational or Vocational Training or Other Special Care**

EASTON characterizes himself to be in good physical health, and he does not appear to have any medical issues that BOP is unable to properly address and accommodate. PSR ¶¶ 121–130. Due to his longstanding drug use, EASTON would likely benefit from substance abuse treatment while incarcerated. PSR ¶¶ 131–135.

**F.     Need to Avoid Unwarranted Sentence Disparity**

Due to EASTON's prominent role as the DTO's highest-volume redistributor, paired with is possession and use of a firearm, the United States believes that he should receive a longer sentence than the redistributors he supplied. *See* Exhibit G – Sentencing Chart. Furthermore, we believe that a 120-month sentence is appropriate considering the actual sentences handed down to his redistributors. With the exception of BARNES, who was only involved in two heroin deals and sentenced to 60 months, EASTON's more regular and higher-volume redistributors received sentences of 84 months, and his wife, who was not nearly as entrenched in the DTO as EASTON was, received a sentence of 72 months. Finally, GEORGE, the other redistributor with direct access to MALDONADO-RAMIREZ and who was sentenced to 96 months, did not possess or use a gun, and obtained significantly smaller quantities of methamphetamine from the DTO than EASTON. Thus, we believe a 120-month sentence for EASTON is commensurate with the sentences handed down to the other DTO members.

## VI.     CONCLUSION

For the reasons set forth above, the United States recommends that this Court sentence EASTON to 120 months of imprisonment, followed by five years of supervised release.

//

//

//

GOVERNMENT'S SENTENCING MEMORANDUM - 22
*United States v. Joseph Troy Easton*, CR21-174 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 500
SEATTLE, WASHINGTON 98001
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

DATED this 18th day of March, 2024.

Respectfully submitted,

TESSA M. GORMAN
United States Attorney


*s/ C. Andrew Colasurdo*
C. ANDREW COLASURDO
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, WA 98101
Telephone:    (206) 553-4075
Fax:          (206) 553-0582
Email:        andy.colasurdo@usdoj.gov

GOVERNMENT'S SENTENCING MEMORANDUM - 23
*United States v. Joseph Troy Easton*, CR21-174 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 500
SEATTLE, WASHINGTON 98001
(206) 553-7970